**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-mj-000050** |
| **v.** | |
| **DA'JON MALLOY,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America respectfully submits this memorandum in support of its motion that Defendant Da'Jon Malloy be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm). This is Defendant Malloy's fourth arrest in the District of Columbia ("DC") for illegal possession of a firearm. His most recent arrest occurred as Malloy was walking through the Navy Yard neighborhood of DC on a Wednesday afternoon with a loaded handgun, and while on supervised release in multiple cases, including a 2022 conviction for shooting at someone outside a DC Metro Station with a different, illegally acquired handgun. In short, Mr. Malloy has a history of illegally acquiring guns and an even longer history of failing to comply with court-ordered conditions of release. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community.

For the following reasons, the Court should order Defendant Malloy detained pending trial.

## BACKGROUND

On March 5, 2025, at approximately 5:00 PM, members of the Metropolitan Police Department's ("MPD") First District were conducting patrols of the First District. Officers were wearing full MPD uniform in fully marked cruisers. MPD Officer Timothy M. Ahl Jr. observed

Defendant Malloy walking westbound in the 100 block of M Street, Southwest and approached to get a better look at Mr. Malloy, as Mr. Malloy appeared to match the description of a suspect for which the First District had issued a "be on the look out" alert (BOLO).  Defendant Malloy crossed the intersection at Delaware Avenue, Southwest, and M Street, Southwest, in disregard of a solid orange "do not walk" signal visible at the crosswalk and in violation of District of Columbia Municipal Regulations.

Officer Ahl pulled over the cruiser, exited the vehicle, and approached Mr. Malloy on the sidewalk in front of an apartment complex located at 219 M Street, Southwest.  Several other officers arrived on the scene shortly thereafter.  Officer Ahl asked Defendant Malloy if he would speak with him, and Mr. Malloy consented.  Officer Ahl informed Mr. Malloy that he had observed him crossing the street against a "no walk" sign and requested identification.  Mr. Malloy provided Officer Ahl with a DC Identification card and Officer Ahl returned to the police cruiser with the identification card.

While Officer Ahl was in the cruiser, several other officers stood on or near the sidewalk with Defendant Malloy.  At this time, an "L" shaped object inside of the crossbody Coach satchel on Mr. Malloy's person is clearly visible on officers' body worn camera (BWC) and in still photos taken from that BWC, as seen below.  Officers asked Defendant Malloy whether he had anything in his possession that the officers should know about, which Mr. Malloy denied.



***Figure 1: Visible "L" Shaped Outline in Defendant Malloy's satchel***

Around this time, Officer Matthew Allen-Garcia ("Officer Allen-Garcia") arrived on scene and observed the clear outline of a sharp "L" shaped object inside of Mr. Malloy's satchel. Officer Allen-Garcia approached Officer Ahl, who was still in the police cruiser with Defendant Malloy's identification card, and informed Officer Ahl that he saw an "L" shape in the bag and inquired whether they had asked about his satchel. Officer Allen-Garcia confirmed with another officer, Officer Alexander Squitieri, that he also saw a "hard line" in Mr. Malloy's satchel.

Officers again asked Defendant Malloy if he had anything on his person that they should know about, including weapons, and also asked specifically about the satchel. Mr. Malloy admitted that he had "weed," which is a slang term for Marijuana, a Schedule I controlled

substance under federal law.  Mr. Malloy then pulled approximately nine bags of what appeared to be prepackaged marijuana and placed them on the ground in front of him.  The weight of the packages was later determined to be 2.89 ounces.  The legal amount for personal possession in DC is 2 ounces or less.



*Figure 2: Bags Consistent with Prepackaged Marijuana*

*Removed from Satchel by Mr. Malloy*

Even after Defendant Malloy removed the packages of marijuana, an "L" shaped outline inside of his satchel continues to be visible on officers' body worn camera.



*Figure 3: "L" Shaped Outline Visible in Mr. Malloy's Satchel After Removal of Marijuana*

When asked by officers if he had removed everything from the bag, Defendant Malloy stated that he also had a scale in the bag.  Mr. Malloy then removed his outer jacket and began to hunch over in a manner that seemed designed to hide the contents of the bag from the officers.  He also took out his cellular phone and appeared to answer a call.  Officer Ahl, who was approaching Mr. Malloy to place him under arrest, observed this strange behavior and grabbed the satchel to remove it from Defendant Malloy's person.  Officer Ahl looked down into the unzipped satchel and observed the bottom of a handgun magazine clearly protruding up from the inside of the satchel.  The satchel was removed without incident and Defendant Malloy was handcuffed and placed under arrest.  Search Incident to Malloy's arrest also revealed THC Wax, which is a concentrated form of tetrahydrocannabinol (THC) derived from Marijuana, a Schedule I controlled substance under federal law.

The firearm recovered was a Glock 19 Gen5 9 millimeter bearing serial number BEYU386. The firearm was loaded with one round of 9 millimeter ammunition in the chamber, with 14

additional rounds of 9 millimeter ammunition inside a 15-capacity magazine. A search of government records revealed that Defendant Malloy was not licensed to possess a firearm in the District of Columbia.



*Figure 4: Image of Gun, Magazine, and Ammunition*

Defendant Malloy was transported to the First District police station for processing and where he was interviewed by First District Detectives. Detective Mark Binkley verbally informed Defendant Malloy of his rights and Mr. Malloy signed a form acknowledging that he had received a warning as to his rights and was willing to answer questions without having an attorney present. During the interview, Mr. Malloy stated that he had borrowed the gun that morning from a friend in Greenbelt, Maryland. Defendant Malloy further acknowledged that he did not have a license for the firearm, that it was in his bag when he was stopped by police, and that he was "aware I'm not supposed to have a gun." Mr. Malloy also claimed that the nine prepackaged bags of Marijuana in his satchel were for "personal use," although he admitted to providing some without pay to a

"female" he was with earlier that day. Notably, Mr. Malloy tested negative for drugs the day after his arrest (March 6), and while on probation has not tested positive for Marijuana since May 2024.

Defendant Malloy was initially charged in DC Superior Court, Case No. 2025-CF2-002317, with Unlawful Possession of a Firearm (Prior Conviction), D.C. Code, § 4503 (a)(1),(b)(1), and Carrying a Pistol without a License (Outside Home or Place of Business), D.C. Code, § 4504(a)(2). A preliminary hearing was held at which the court heard sworn testimony, found probable cause, and ordered that Defendant Malloy be detained pending trial. The government has now moved to dismiss that case in light of this matter.

On March 24, Magistrate Judge Matthew Sharbaugh approved a federal criminal complaint against Defendant Malloy for violation of 18 U.S.C. § 922(g)(1) (unlawful possession of ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year). An initial appearance was held on March 26, at which the government orally moved for detention pursuant to § 3142(f)(1)(E) of the federal bail statute. The Court ordered the defendant held without bond pending a detention hearing, which was set for April 1, 2025.

## LEGAL AUTHORITY & ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.* "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations

omitted).

When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  *See* 18 U.S.C. § 3142(g). In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

## I.  **Bail Reform Act Factors Favor Detention Given Danger to the Community**

The United States seeks detention pursuant to 18 U.S.C. §§ 3142(d)(1)(A)(iii) (on probation or parole) and 3142(f)(1)(E) (felony involving possession of a firearm).  A review and understanding of the facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or Defendant Malloy's return to Court should he be released.  *See* 18 U.S.C. § 3142(e)(1).  All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the

8

nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

### A.      The Nature and Circumstances of this Offense Merits Detention.

Defendant Malloy's conduct here—that is, his decision to carry a loaded, illegally acquired firearm through the Navy Yard neighborhood of DC—weighs heavily in favor of pretrial detention.  While Mr. Malloy is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms.  *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Further, Malloy unlawfully acquired and then chose to carry a loaded firearm while on probation for multiple cases, including convictions arising from an October 2021 shooting, in which he used an unlawfully acquired firearm to shoot towards another man while at the Anacostia Metro Station.  *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (finding that, in the context of determining the nature and circumstances of the offense, a felon "carrying a loaded firearm—especially if the carrier has a violent history . . . has the great potential to escalate into violence.").

### B.      The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, favors detention.[1]  The

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Government's case against Defendant Malloy is considerable: the outline of the firearm is visible on officers' body-worn cameras throughout their interactions with Mr. Malloy, and the loaded firearm and ammunition were recovered directly from a bag on Mr. Malloy's person. But in addition to the cotemporary documentary and physical evidence, the Court can also rely on Mr. Malloy's own words: Mr. Malloy *admitted* in a voluntary interview after his arrest that he "got caught with a gun in the bag" and that he knew he was "not supposed to have the gun."

Simply put, this is not a close call. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. Accordingly, the strength of the evidence against Defendant Malloy also weighs in favor of detention.

### C.     Defendant Malloy's History and Characteristics Merit Detention.

The third factor—the history and characteristics of the defendant—also heavily favors detention. As the chart below summarizes, Defendant Malloy's long criminal history and repeated failures to obey court-ordered terms of release are astounding.

| Malloy's Criminal History and Pattern of Probation Violations | | | |
|---|---|---|---|
| Case Number (Jurisdiction) | Charge | Disposition | Documented Supervised Release Violations? |
| 2021-CF3-006128 (DC) | Assault with a Dangerous Weapon (Gun)<br><br>Unlawful Possession of a Firearm (Prior Conviction) | 30 months confinement; 3 years Supervised Release<br><br>14 months confinement; 3 years Supervised Release | Yes |

| CT170865X (Maryland) | Burglary | 15 years confinement; 13 years 6 months suspended; 5 years probation | Yes[2] |
|---|---|---|---|
| CT160257X (Maryland) | Assault Second Degree<br><br>Theft of Property or Services (< $1,000) | 18 months confinement; 1 year & 6 days suspended; 3 years supervised release | Yes |
| 5T00092370 (Maryland) | Theft (<$1,000) | 1 year supervised probation | Yes[3] |
| 2011-DEL-002273 (DC) | Unlawful Entry | JUV Probation: 3 Months | Yes |
| 2011-DEL-000857 | Burglary Two<br><br>Destruction of Property (<$200)<br><br>Theft Second Degree | JUV Probation: 6 Months<br><br>JUV Probation: 6 Months<br><br>JUV Probation: 6 Months | Yes |
| 2009-DEL-001379 | Destruction of Property (<$200) | JUV Probation: 6 Months | No |

Even giving Mr. Malloy the benefit of excusing his early convictions and associated release violations as youthful mistakes, the defendant's last three cases alone, and the laundry list of associated release violations for those cases, are extremely troubling.

On January 28, 2016, two 7/11 store employees observed Mr. Malloy shoplifting various items and asked him to empty his pockets. Mr. Malloy pulled out a knife, which he brandished at

---

[2] The PSA report states that "there has been no reports of any violation of [Malloy's] release conditions." However, the public court docket in CT170865X (**Exhibit 1**) clearly reflects multiple probation violation hearings. Further, an attorney with the Office of the State's Attorney for Prince George's County confirmed that Mr. Malloy was found in violation of his probation on September 20, 2019, and sentencing was held on November 1, 2019, at which Malloy was sentenced to additional confinement and his probation extended.

[3] While the PSA does not include any information regarding Mr. Malloy's probation in 5T00092370, the public court docket for 5T00092370 (**Exhibit 2**) indicates that several bench warrants for probation violations were issued after Mr. Malloy's referral to supervision.

the employees while warning them to get away from him. Defendant Malloy fled the scene but shortly after was arrested and admitted to police that he had pulled out a knife. On July 15, 2016, he pled guilty in Prince George's County Case No. CT160257X to 2nd Degree Assault and Theft of Property or Services Less than $1,000 and was sentenced to 18 months confinement with 1 year and 6 days suspended, and 3 years of supervised probation.

After his release and while on probation for the 7/11 robbery, on or about November 18, 2016, Mr. Malloy forcefully broke into a neighbor's residence and stole over a thousand dollars of shoes and clothing. Defendant Malloy then posted pictures of himself on social media wearing the stolen clothing. When police searched Mr. Malloy's room, they recovered several of the stolen items and observed evidence of drug paraphernalia, including a digital scale with marijuana residue on it. Defendant Malloy was arrested on June 18, 2017, and on April 6, 2018, he pleaded to first degree burglary and was sentenced to 15 years confinement with all but 18 months suspended, and five years' probation. He received credit for time served and was released in June 2018. After multiple probation violations resulting in commitment beginning June 20, 2019, he was formally found in violation of probation in both of the Prince George's County cases on November 1, 2019 and sentenced to an additional 540 days. However, Mr. Malloy received credit for prior time served and was ultimately released on November 30, 2019.

Less than two months after his release and while still on probation in both Maryland cases, on January 19, 2020 Mr. Malloy was arrested in Northwest DC for illegal possession of a stolen, loaded Ruger 9mm firearm and charged with various gun offense, including Unlawful Possession of a Firearm (Prior Conviction), in DC Superior Court Case No. 2020 CF2 000898. He was initially detained and then released on February 6, 2020 into the DC Superior Court's High

Intensity Supervision Program (HISP) pending trial.[4]  Approximately two-and-a-half months later and while on pre-trial release, Mr. Malloy unlawfully entered a house in Northeast DC, and was charged for that conduct in DC Superior Court Case No. 2020 CMD 0006330.  He was again released.

On August 6, 2021, MPD arrested Mr. Malloy in Northeast DC for possession of a loaded Glock 26 9 millimeter firearm.  The August 6, 2021 arrest was not charged[5] and Malloy released. Undeterred, Mr. Malloy apparently acquired yet *another* illegal firearm, as on October 26, 2021, while he was on supervised release in *four* cases (probation in the two Maryland cases and on pre-trial release for the two pending DC matters), Mr. Malloy and another man got into an altercation at the Anacostia Metro Station.  As the men exited the station and were approximately fifteen feet apart, Mr. Malloy pulled out a Springfield XD 9 millimeter handgun and fired one shot at the man, who turned and ran away.  Defendant Malloy then attempted to discard the still-loaded firearm into a garbage can, where it was quickly recovered, and Mr. Malloy arrested on scene.  He later pled guilty to Assault with a Dangerous Weapon and Unlawful Possession of a Firearm (Prior Conviction), admitting that he had not fired in self-defense.  He was sentenced to 30 months confinement and 3 years of supervised release.  As part of the plea, the government agreed to dismiss the pending charges in DC Superior Court Case No. 2020 CF2 000898 (the January 19, 2020 gun charges) and 2020 CMD 0006330 (the April 21, 2020 unlawful entry).  In February 2024, Mr. Malloy was released from confinement and again placed under supervised probation.

---

[4] On September 14, 2021, Mr. Malloy was transferred from HISP to general supervision in Case No. 2020-CF-000898.  The Anacostia Metro Station shooting occurred just over a month later.
[5] Although Mr. Malloy's January 19, 2020 and August 6, 2021 firearms arrests did not result in convictions, they are included here as additional context for the Court regarding Malloy's propensity to walk through the streets of DC with loaded firearms, his disregard for court-ordered conditions of release, and the potential consequences of releasing him pending trial.

### *Most Recent Violations of Court-Ordered Conditions*

Unfortunately, and even prior to his March 5 arrest in this matter, Defendant Malloy has continued to flout court-ordered conditions. He has also tried to hide those violations. Just last month, Defendant Malloy twice submitted bogus urine samples to CSOSA on February 18 and February 20. When a legitimate urine sample was finally collected on February 25, it tested positive for Fentanyl. Mr. Malloy's CSO Sabrina Hayes reports that the February test was Mr. Malloy's *twelfth* failed drug test.

Perhaps even more troublingly, as page 3 of the PSA reflects, Malloy was arrested in Pennsylvania on August 17, 2024 and has pending drug possession and distribution charges stemming from that arrest. The officer's affidavit in that case (attached as **Exhibit 3**) details how, after a Pennsylvania State Police corporal attempted to pull over their vehicle for speeding, Defendant Malloy and a female companion led the police on a car chase reaching speeds of at least 130 miles per hour. The officer lost sight of the vehicle, but Malloy and his companion were eventually apprehended with their distinctive, bullet hole-ridden vehicle at a Sheetz gas station. Officers recovered from Malloy 11 clear plastic vials with a white substance, 36 grams of Marijuana, a scale, and 18 fake $100 bills. Defendant Malloy then failed to report this arrest to CSOSA. As page 4 of the PSA reflects, on March 12, 2025, a warrant for Defendant Malloy's probation violations was issued and remains lodged as a detainer.

### D.    Mr. Malloy Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Defendant Malloy's release, similarly weighs in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to

"'disable the arrestee from executing that threat.'"  *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence.  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, Defendant Malloy has not just repeatedly illegally acquired and then carried loaded firearms throughout DC; his 2022 convictions for the Anacostia Metro Shooting establish that he is willing to *use* a firearm, even in a public place.  He poses an obvious and articulable threat to the community.  Specifically, Mr. Malloy's history demonstrates that, if released, there is a significant threat that he will again choose to ignore court orders and continue to carry loaded firearms unlawfully.  Even if this Court were to find that Malloy is not a risk of committing another crime of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

Defendant Malloy is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E).  All four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and Malloy poses a substantial risk of danger to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney
D.C. Bar No. 481866

15

By:     /s/ *Emily Reeder-Ricchetti*
EMILY REEDER-RICCHETTI
DC Bar No. 252710
Special Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-834-0553
Emily.Reeder-Ricchetti2@usdoj.gov